## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH PETERSON, | |
| Plaintiff | Case No. |
| v. | |
| THE CHURCH OF THE LATTER- DAY SAINTS; RICHARD MCCLUNG AND DOES 3-100, | **JURY DEMAND** |
| Defendants. | |

## <u>COMPLAINT</u>

COMES NOW, Plaintiff ELIZABETH PETERSON, by and through her attorneys, Romanucci & Blandin LLC, hereby complains and alleges against Defendants THE CHURCH OF THE LATTER-DAY SAINTS (a corporation), RICHARD MCCLUNG (an individual), and DOES 3 through 100, inclusive ("Defendants") as follows:

### INTRODUCTION

1.       This case involves egregious sexual and emotional abuse of a child.

2.       In 2006, perpetrator Defendant RICHARD MCCLUNG ("PERPETRATOR") began his abuse of PLAINTIFF when she was eight years old. The sexual abuse continued until 2007.

3.       In 2006, PERPETRATOR held a position of authority and leadership with THE CHURCH OF THE LATTER-DAY SAINTS ("L.D.S. CHURCH"), as a Second Counselor to the Bishop. PERPETRATOR used his position of authority in the CHURCH to allow PLAINTIFF's mother to leave PLAINTIFF in his care, as well as to contact PLAINTIFF in order to execute his sexual abuse.

1

4.      As a Second Counselor to the Bishop, PERPETRATOR was a L.D.S. CHURCH-supervised adult volunteer with significant respect, responsibility, and authority associated with his role in the L.D.S. CHURCH. In his role as Second Counselor, he was one of two individuals appointed to assist and give advice to the bishop in his ward. The Bishop is the local lay leader who presides over, and acts as pastor, of a ward. The role of Bishop is the highest within a ward, which is the local organization.

5.      PERPETRATOR used his role in the L.D.S. CHURCH, and PLAINTIFF's ties to the L.D.S. CHURCH to isolate and abuse PLAINTIFF.

6.      By 2006, PLAINTIFF's mother had a calling as the Party Director of the family's ward, the local organizational branch of the L.D.S. CHURCH at the Rockford ward, where the family attended, and where PERPETRATOR, was Second Counselor to the Bishop, for years.

7.      One day in Fall of 2006 PLAINTIFF's mother went over to PERPETRATOR's home in order to discuss party planning for the L.D.S. CHURCH's fall harvest party. PLAINTIFF was with her mother at the time. Upon information and belief this took place in October 2006. When PLAINTIFF and her mother arrived at PERPETRATOR's home, PLAINTIFF's mother began speaking with PERPETRATOR, in his role as Second Counselor, and in her mother's role as Party Director. PLAINTIFF's mother then told PERPETRATOR that she was going to go to the store to buy the items the L.D.S. CHURCH needed for the event. This is when PERPETRATOR coerced PLAINTIFF's mother to leave PLAINTIFF, who was eight years old at the time, in his custody. PERPETRATOR claimed to do so in order for PLAINTIFF's mother to go complete the shopping she needed to for the fall harvest party she was planning for the L.D.S. CHURCH. PERPETRATOR FURTHER PREYED UPON PLAINTIFF BY MANIPULATING MOTHER TO BELIEVE SHE NEEDED A BREAK FROM HER DAUGHTER and leaving

Plaintiff in PERPETRATORS care and custody would provide her the relief she needed. PLAINTIFF's mother agreed to leave PLAINTIFF with PERPETRATOR, in his home, for an hour in order to complete errands for L.D.S. CHURCH, in her role as Director of Parties. PERPETRATOR's wife was not home, so PLAINTIFF was to be cared for by PERPETRATOR alone.

8.      After PLAINTIFF's mother left, PERPETRATOR proceeded to fondle her chest and then rape eight-year-old PLAINTIFF. During the rape, PERPETRATOR repeatedly told PLAINTIFF that he would hurt or kill her mother if PLAINTIFF reported the abuse to her. PERPETRATOR also continued to repeat that they were playing a "special little game" and that it was their "special little secret" so she should not tell her mom what took place. PERPETRATOR also told PLAINTIFF that "it would feel good in a little bit" in reference to his forceful rape.

9.      When PLAINTIFF's mother returned to the home, after completing her errands for the L.D.S. CHURCH, PERPETRATOR told PLAINTIFF's mother that "she was such an angel" and that he "will watch her again anytime, just let me know."

10.     Fearing that PERPETRATOR would follow through on his threats of harming, or killing, her mother PLAINTIFF did not report the abuse to anyone.

11.     Several weeks after the rape, while at the L.D.S. CHURCH building, also known as the Stake Center, PERPETRATOR followed PLAINTIFF into the CHURCH's kitchen and proceeded to fondle her over the clothes on church property.

12.     The third incident of abuse also took place on L.D.S. CHURCH property. On that day PERPETRATOR followed PLAINTIFF into an empty classroom located near the back entrance to the L.D.S. CHURCH's Stake Center, where PLAINTIFF was in attendance for either a service or a youth L.D.S. CHURCH event. After following PLAINTIFF into the empty

classroom. PERPETRATOR proceeded to fondle PLAINTIFF over her clothes again.

13.     The two incidents of fondling over the clothes took place on the L.D.S. CHURCH premises, while PERPETRATOR, was acting as an agent for the L.D.S. CHURCH in his role as a leader in the L.D.S. CHURCH. Oftentimes at these events leaders would be present in order to preach to the community prior to beginning events.

14.     These repeated incidents of sexual abuse caused PLAINTIFF pain, both physically as a result of the rape and groping, as well as psychologically.

15.     At the time of both instances of sexual abuse on L.D.S. CHURCH property, and during L.D.S. events, other people were present and should have witnessed PERPETRATOR isolate PLAINTIFF in order to abuse her. Upon information and belief, this was part of PERPETRATOR's pattern of sexually abusing young members of the L.D.S CHURCH community.

16.     Upon information and belief, at the time that PERPETRATOR abused PLAINTIFF he had been charged with the sexual abuse of another minor girl in September 2006, at which time CHURCH was put on notice of the danger that PERPETRATOR posed to PLAINTIFF and other minor children. Yet the L.D.S. CHURCH did nothing to protect the young children of their community, in continuing to allow PERPETRATOR to be on L.D.S. CHURCH property, and maintain his leadership position within the L.D.S. CHURCH, as Second Counselor to the Bishop. In fact, the child who reported the abuse against PERPETRATOR was eight or nine years of age at the time her alleged abuse took place.

17.     Several years after the abuse, PLAINTIFF had repressed her memories around the abuse and had been able to avoid being alone with PERPETRATOR or interacting with him.

18.     One day in the Summer of 2012, when she was fourteen years old, while at the

4

Stake Center for yet another L.D.S. CHURCH service PLAINTIFF, and a friend of hers, walked out of Sacrament out the back toward the back foyer of the Stake Center where she saw PERPETRATOR standing with two other adults. By this time PERPETRATOR had been excommunicated from the L.D.S. CHURCH in relation to his conviction for other acts of sexual abuse of minor girls. PERPETRATOR had been convicted of the sexual abuse of a minor in relation to his 2006 conviction and had been required to register as a sex offender. PERPETRATOR first registered as a sex offender on September 20, 2007. Furthermore, he had been indicted in at least one other case of sexual abuse of a minor on October 12, 2011.

19.     Upon information and belief PERPETRATOR was on L.D.S. CHURCH property during the Summer of 2012 to meet with the Bishop at the time, in order to ask to reinstate his membership with the L.D.S. CHURCH after his previous excommunication.

20.     Upon seeing PERPETRATOR in the Stake Center building in 2012, the memories of PLAINTIFF's abuse came flooding back to her. PLAINTIFF then proceeded to lock herself in the bathroom with her friend, who had also reacted poorly to seeing PERPETRATOR.

21.     Later that night, or the next, PLAINTIFF and her friend disclosed to one another that PERPETRATOR had sexually abused them both. The other victim did not reveal that she had been raped by PERPETRATOR, but that he had also fondled her over the clothes on several occasions, around the same time period as PLAINTIFF, while on L.D.S. CHURCH grounds.

22.     Shortly after PLAINTIFF disclosed her abuse to the other victim, the second victim disclosed it to someone and word got back to the other victim's mother. When the second victim was confronted by her mother about the abuse, in PLAINTIFF's presence, she also disclosed PLAINTIFF's abuse. The second victim's mother then reported the allegation to PLAINTIFF's mother.

23. PLAINTIFF's mother then spoke to PLAINTIFF about what she had heard, and upon confirmation, she called the police. PLAINTIFF's mother then took her to the Rockford police station, where PLAINTIFF recounted her abuse to three police officers.

24. PLAINTIFF's mother then took PLAINTIFF and reported the abuse to the Bishop, who instead of caring for, and prioritizing, PLAINTIFF's safety, admonished PLAINTIFF for not forgiving PERPETRATOR. In this meeting PLAITNIFF recalls being cut off from sharing her traumatic memories of being sexually abused as a child so the Bishop could tell her that she needed to forgive PERPETRATOR for the abuse. She was also told she needed to repent "for not being able to forgive" PERPETRATOR. As far as she recalls, nothing came out of this meeting with the Bishop, and he did nothing to help her. This propounded PLAINTIFF's psychological trauma.

25. The L.D.S. CHURCH knowingly and directly benefited from the trafficking of children, including PLAINTIFF.

## JURISDICTION AND VENUE

26. The Court has jurisdiction to hear the Trafficking Victims' Protection Act claim pursuant to 18 United States Code ("U.S.C.") § 1595(a) and the court's federal-question jurisdiction, according to 28 U.S.C. § 1331. The court has jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367, as these claims are closely related to the Trafficking Victims' Protection Act claims, as they arise out of the same case or controversy.

## THE PARTIES

27. PLAINTIFF Elizabeth Peterson is 26 years of age. PLAINTIFF was at all relevant times herein mentioned, resident of Rockford, Illinois. As a minor PLAINTIFF was the victim of unlawful sexual assault and molestation by PERPETRATOR.

28. Defendant, THE CHURCH OF THE LATTER-DAY SAINTS ("L.D.S.

CHURCH"), is and was at all relevant times herein mentioned, the religious entity, located at 324 University Drive, Rockford, Illinois, 61108, through which PERPETRATOR, held and used his position as Second Counselor to the Bishop to sexually abuse PLAINTIFF. L.D.S. CHURCH is a corporation duly organized and operating pursuant to the laws of the State of Utah. L.D.S. CHURCH operates meeting houses, congregations, and temples within the state of Illinois. L.D.S. CHURCH does business and conducts continuous and systemic activities in Illinois. The L.D.S. CHURCH's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The L.D.S. CHURCH is registered to do business in Illinois, and the presiding Bishop, and his Second Counselor, serves as the pleasure of and subject to the direct and absolute control of L.D.S. CHURCH. L.D.S. CHURCH is divided into wards, stakes and areas.

29.     Defendant, RICHARD MCCLUNG ("PERPETRATOR"), at all relevant times was an Illinois resident, and was a Second Counselor to the Bishop at L.D.S. CHURCH.

30.     The Defendants each assumed responsibility for the wellbeing of L.D.S. CHURCH members, whether as clergy or volunteers appointed by L.D.S. CHURCH. In their capacities as Bishop, and other positions such as Second Counselor, Stake President, Relief Society Present, visiting teacher, Sunday School and Primary School teacher, the individual Defendants were held out by the Church as its agents and placed in positions of responsibility and authority over L.D.S. CHURCH members. As a result, they each had a special relationship with members of the congregation, including the minor PLAINTIFF. The relationship gave rise to a duty to protect members of the congregation, including the minor PLAINTIFF, from a foreseeable risk of harm. At all relevant times, the L.D.S. CHURCH assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child

7

members from the harm they might inflict.

31.     The L.D.S. CHURCH's income comes from member tithes which is turned over to the L.D.S. CHURCH for investment and other uses, including support of the administrative expenditures of the L.D.S. CHURCH's wards, stakes, and areas. The L.D.S. CHURCH does not provide information about their finances to their members or the public. Upon information and belief, the L.D.S. CHURCH receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, the L.D.S. CHURCH owns financial assets and real estate in excess of 200 billion.

32.     The true names and capacities, whether individual, plural, corporate partnership, associate or otherwise, of Defendants DOES 3 through 100, inclusive, are unknown to PLAINTIFF at this time, who therefore, sues said Defendants by such fictious names. PLAINTIFF is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to PLAINTIFF and the resulting injury and damages to PLAINTIFF as hereinafter alleged. PLAINTIFF will amend this Complaint to assert true names/and or capacities of such fictitiously named Defendants when the same have been ascertained.

33.     PLAINTIFF is informed and believe and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in-interest and/or joint ventures of their co-defendants and were as such acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint

venture.

34.     All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advanced knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers, directors and/or managing agents, respectively ratified, accepted to the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co-employees, employees and agents.

## **STATUTE OF LIMITATIONS**

35.     This is an action for childhood sexual abuse brought pursuant to Code of Civil Procedure ("CCP") 735 Illinois Compiled Statutes ("ILCS") 5/13-202.2 (a)-(f) and any other applicable statute. Under Illinois CCP §13-202.2 (2014), an action for damages for personal injury based on childhood sexual abuse may be commenced at any time. The statue of limitations applies to actions commenced after the effective date of the Amendatory Act of the 98th General Assembly in January 2014, if the claim was not time barred under the state of limitation or statute of response prior. Under §13-20.2 (2003), an action for damages based on childhood sexual abuse must be commenced within 10 years of the date the limitation period begins and only applies to claims not time barred at the time the Amendatory Act of the 93rd General Assembly became effective in July 2003. Under CCP § 13-202.2 (2003), the limitation period does not begin to run before the person

abused attains the age of 18 years old. The misconduct against PLAINTIFF began in 2006, when PLAINTIFF was a minor child well under the age of 18. PLAINTIFF turned 18 in 2016; at which time her statute of limitations would have started running. At the time of her abuse, the statute of limitations under CCP § 13-202.2 (2003) would have been 10 years after her 18th birthday in 2016. Thus, PLAINTIFF's claim was not time barred at the time the 2014 Amendatory Act of the 98th General Assembly took effect in January 2014. Therefore, from the date of her 18th birthday in 2016, PLAINTIFF had 20 years to file a civil action for sexual abuse she suffered as a minor. PLAINTIFF's 20-year statute of limitations will not lapse until her birthday in 2036. As such, PLAINTIFF's complaint is timely.

36.     An individual who is victim of a violation of 18 United States Code ("U.S.C.") § 1591, sex trafficking of children, may bring a civil action against their perpetrator under 18 U.S.C. § 1595. Under 18 U.S.C. § 1595 PLAINTIFF may commence a cause of action no later than 10 years after the cause of action arose, or 10 years after the victim reaches 18 years of age, if the victim was a minor, whichever is later. PLAINTIFF's cause of action arose in October 2006, but she did not turn 18 years old until 2016, giving her until 2026 before her claim is time barred. At the time of filing this claim, nine years had passed since PLAINTIFF turned 18. As such, PLAINTIFF's complaint is timely.

## FACTUAL ALLEGATIONS

### (Common to All Causes of Action)

37.     From approximately 2006 until 2007, PLAINTIFF Elizabeth Peterson was a minor child and a member of L.D.S. CHURCH, in Rockford, Illinois. PERPETRATOR was Second Counselor to the Bishop and used his position of authority therein to gain access to and to sexually abuse PLAINTIFF. PERPETRATOR's abuse began in October 2006 when PLAINTIFF was just

eight years old, and PERPETRATOR was 63 years old. PERPETRATOR utilized and exploited his role, as well as PLAINTIFF's mother's role, in L.D.S. CHURCH in order to get PLAINTIFF alone so that he could sexually abuse her, both in his home and on L.D.S. CHURCH property.

38.     Shortly after PLAINTIFF and her mother arrived at PERPETRATOR's home in October 2006 in order for PLAINTIFF's mother to discuss party planning for CHURCH with PERPETRATOR, in their roles as Party Director and Second Counselor to the Bishop, respectively, PERPETRATOR used his leadership role in L.D.S. CHURCH in order to get PLAITNIFF's mother leave PLAINTIFF alone with him in his home, so that PLAINTIFF's mother could go to the store to purchase items and goods for the benefit of L.D.S. CHURCH. After PLAINTIFF's mother left his home PERPETRATOR immediately took advantage of being alone with PLAINTIFF and proceed to subject her to sexual assault and sexual abuse, in the form of fondling PLAINTIFF's chest and then raping her.

39.     In the proceeding weeks and months, on at least two occasions PERPETRATOR would follow and isolate PLAINTIFF while they were in attendance of L.D.S. CHURCH-sponsored events in the L.D.S. CHURCH owned building where they held events and religious services, known as the Stake Center, and fondled her over her clothes.

40.     At all times mentioned herein, PERPETRATOR was a figure of religious authority whom PLAITNIFF had been taught to trust and respect implicitly via the teachings of L.D.S. CHURCH. Additionally, in his role as Second Counselor to the Bishop PERPETRATOR was presented as someone who had authority and was in good standing with L.D.S. CHURCH.

41.     PLAINTIFF is informed and believes and thereupon alleges that, at all times herein mentioned Defendants knew or should have known that PERPETRATOR was using his position of authority with L.D.S. CHURCH in order to gain access to and sexually abuse its minor

members, including PLAINTIFF, and Defendants failed to take reasonable steps to protect them.

42.     PERPETRATOR engaged in unlawful physical conduct with PLAINTIFF at, at least, two separate locations, including at L.D.S. CHURCH, in the Stake Center, and in his own home.

43.     L.D.S. CHURCH maintains a pattern and practice of concealing abuse from the authorities and its members as to the threat its members pose. Additionally, L.D.S. CHURCH maintains a pattern and practice of signaling to its members that they should conceal and/or fail to report abuse as to keep "the Church from being inappropriately implicated in legal matters" *See President Russell M. Nelson Letter* (August 4, 2021). Through his policy of concealment, the Church ratifies abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

44.     The Stake President and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse." In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as, "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days as year and is staffed by legal and counseling professionals who 'provide guidance to the bishop in how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim/" MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706,707 (2014) [internal citation omitted in original].

45.     In reality, the L.D.S. CHURCH staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah. Rather than notifying law enforcement

or other government authorities when Bishops and other L.D.S. CHURCH clergy members call the Helpline regarding sexual abuse within the L.D.S. CHURCH, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the Bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

46.     In other words, the L.D.S. CHURCH uses the Helpline to allow Bishops direct contact to Kirton McConkie in order to get ahead of claims and avoid costly lawsuits against L.D.S. CHURCH. This is directly contradictory to what L.D.S. CHURCH states the Helpline is supposed to do, which is offer advice to high level members of L.D.S. CHURCH to protect victims from further abuse and deal with the harms arising from the abuse that already occurred. This is consistent with the instructions laid out in President Russell M. Nelson's Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information about abuse.

47.     L.D.S. CHURCH actions, practices, and customs encompass a culture that prioritizes protecting predators, and the financial interests of L.D.S. CHURCH, overprotecting innocent victims of sexual abuse. L.D.S. CHURCH did not report any abuse, nor did they warn or protect children from abuse they knew or should have known that PERPETRATOR committed. Instead, L.D.S. CHURCH continued to allow PERPETRATOR continued authority, leadership, and access to young children. Upon information and belief, eventually PERPETRATOR was excommunicated from L.D.S. CHURCH, after being criminally convicted of sexually abusing another young girl. By that point, L.D.S. CHURCH had placed PLAINTIFF and other young girls in the L.D.S. CHURCH community at risk of harm from PERPETRATOR.

48.     Additionally, L.D.S. CHURCH allowed PERPETRATOR to return to L.D.S. CHURCH property in order to meet with the Bishop regarding re-joining L.D.S. CHURCH after

he had been excommunicated. This took place after PERPETRATOR was convicted of criminal sexual abuse against a minor for an incident in which he was charged in September 2006; after he had been required to, and successfully had, registered as a sex offender in September 2007; and was indicted of sexual abuse of a minor, for the abuse of another young girl, in October 2011. At the time PLAINTIFF ran into PERPETRATOR on L.D.S. CHURCH grounds and suffered severe emotional distress, L.D.S. CHURCH had ample notice and knowledge of PERPETRATOR's history of sexual abuse of children. In allowing PERPETRATOR to continue to hold a position of authority in L.D.S. CHURCH, and allowing him access to children, after the September 2006 charges were filed against him, L.D.S. CHURCH carelessly, recklessly, negligently, and consciously disregarded PLAINTIFF's rights, and failed to protect her.

49.     Furthermore, at the time in 2012, L.D.S. CHURCH was also on notice that the victims of his alleged abuse were associated with L.D.S. CHURCH. Allowing PERPETRATOR back on CHURCH grounds in 2012, by which time he had been convicted of sexual abuse of a minor and indicted on additional charges of sexual abuse of a minor, was a clear careless, reckless, negligent, and conscious disregard of PLAINTIFF's rights.

50.     Upon information and belief, at all times herein mentioned Defendants, L.D.S. CHURCH and DOES 3-100, (1) knew PERPETRATOR was a sexual predator; (2) knew that PERPETRATOR leveraged his authority with CHURCH in order to gain access to young children; and (3) knew that PERPETRATOR presented a risk of imminent harm to young members of CHURCH.

## COUNT 1

## VIOLATION OF TRAFFICKING VICTIMS' PROTECTION ACT

## (18 U.S.C. §§ 1591 and 1595)

**(Plaintiff Against All Defendants and DOES 3-100)**

51.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

52.     An individual who is a victim of violation of 18 U.S.C. § 1591 may bring a civil action against their perpetrator under 18 U.S.C. § 1595.

53.     18 U.S.C. § 1591 defines trafficking, with respect to the perpetrator, as the act of recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting by any means a person knowing, or in reckless disregard of the fact, that means force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act.

54.     Coercion is defined as "threats of serious harm to or physical restraint against any person; any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or the abuse or threatened abuse of law or the legal process." (18 U.S.C. § 1591.)

55.     A commercial sex act is any sex act on account of which anything of value is given or received by any person. The term "anything of value" is construed liberally by courts, and the value is subjectively determined according to the party giving or receiving the item.

56.      Plaintiffs must only show the trafficking had a *de minimis effect* on interstate commerce

57.     PERPETRATOR solicited, by offering PLAINTIFF's mother free babysitting services to leave PLAINTIFF at his residence and leave and harbored, by physically secluding and trapping PLAINTIFF within his home during the sexual assault in October 2006, PLAINTIFF with the intent for PLAINTIFF to perform a commercial sex act.

15

58.     PERPETRATOR further coerced PLAINTIFF in October 2006, to perform the commercial sex act, by using force and threatening to hurt or kill PLAINTIFF's mother if she prevented him from raping her or reported what took place to her mother.

59.     Thus, PERPETRATOR engaged in acts that constituted a threat of force or coercion to cause PLAINTIFF to engage in a commercial sex act.

60.     PLAINTIFF was coerced into performing a commercial sex act on at least three different occasions.

61.     PLAINTIFF's trafficking had more than a *de minimis effect* on interstate commerce, since he offered his free labor in babysitting in exchange for PLAINTIFF's mother to go purchase items and goods at the store for the benefit of L.D.S. CHURCH.

62.     But for PLAINTIFF's mother needing to purchase items and goods for the L.D.S. CHURCH event that she was planning, PLAINTIFF's mother would not have left PLAINTIFF with PERPETRATOR.

63.     It was in PLAINTIFF's mother's role as Director of Parties and PERPETRATOR's role as Second Counselor to the Bishop that PLAINTIFF was placed in PERPETRATOR's custody for that time period. If PLAINTIFF's mother had not been functioning in her role as Director of Parties to L.D.S. CHURCH, PLAINTIFF's mother would not have been at PERPETRATOR's home that day and neither would PLAINIFF.

64.     PLAINTIFF's mother's calling was a volunteer position, and as such L.D.S. CHURCH benefitted from her free labor in all of the steps she took in her role as Director of Parties. L.D.S. CHURCH directly benefitted from the free labor PLAINTIFF's mother provided them that day, in purchasing items and goods and party planning.

65.     Thus, PERPETRATOR is liable pursuant to § 1591 (a)(1) and PLAINTIFF is

16

entitled to bring this civil action against PERPETRATOR pursuant to 18 U.S.C. § 1595(a).

66.     In addition, L.D.S. CHURCH knew or recklessly disregarded the fact that PERPETRATOR was in contact with PLAINTIFF's mother while PLAINTIFF was present, when planning a L.D.S. CHURCH event, and offering assistance to PLAINTIFF's mother knowing she had six children and would benefit from being child-free to complete her purchases for L.D.S. CHURCH in her role as Director of parties, that it would coerce and solicit PLAINTIFF into performing commercial sexual acts.

67.     Separate from perpetrator liability, 18 U.S.C. § 1591(a)(2) also holds persons or entities liable for sex trafficking who *knowingly benefit*, or attempt or conspire to benefit, financially or by receiving any goods or services of value from participating in a venture, which that person knew or should have known has engaged in sex trafficking.

68.     A venture is commonly understood as an undertaking involving risk which is established by two or more individuals and need not be a legal partnership.

69.     Participation in a venture means "knowingly assisting, supporting, or facilitating a violation" of the perpetrator liability under § 1591(a)(1).

70.     Defendants L.D.S. CHURCH, and DOES 3-100 engaged a venture as follows:

   a.   L.D.S. CHURCH was aware that Rockford Ward would flourish, with a growing membership, tithes and financial offerings, as long as it maintained its reputation within its community, including its ability to host events as a community. In order to safeguard this reputation and maintain financial stability, L.D.S. CHURCH and DOES 3-100, covered up and hid the sexual abuse. L.D.S. CHURCH and DOES 3-100 failed to consider the reported allegation of abuse against PERPETRATOR, for which he was facing

charges in September 2006.

b.  Additionally, L.D.S. CHURCH and DOES 3-100 failed to investigate the allegations of abuse and inform the impacted young members and their families within the L.D.S. CHURCH community. The failure to investigate and inform families of PERPETRATOR's abuse not only allowed PLAINTIFF to suffer abuse on that first incident in October 2006 but also allowed PLAINTIFF to continue to be sexually abused by PERPETRATOR afterwards.

c.  In exchange for continued tithes and financial donations apart from tithing, L.D.S. CHURCH and DOES 3-100 would hide, cover up, and conceal any information of known sexual abuse at the hands of PERPETRATOR from other members of the community and the PLAINTIFF's family.

d.  Furthermore, in exchange for free labor in the form of PLAINTIFF's mother's calling as Director of Parties, in planning, preparing for, and hosting parties for L.D.S. CHURCH, L.D.S. CHURCH and DOES 3-100 would hide, cover-up, and conceal known abuse by PERPETRATOR among other young members of L.D.S. CHURCH's community, from other members of the community and PLAINTIFF's family.

e.  L.D.S. CHURCH and DOES 3-100 knew that if it became common knowledge among its community members that there was a sexual predator such as PERPETRATOR sexually assaulting and abusing young children without being stopped, it would alarm, enrage and disenfranchise members who would ultimately cease their financial, and free labor, commitments to

L.D.S. CHURCH. In order to protect its source of income and moral reputation, as well as its source of free labor, L.D.S. CHURCH thus concealed, covered up and hid PERPETRATOR's abuse, which had the inevitable consequence of assisting and facilitating future abuse of young members of the community, including PLAINTIFF.

f.     Similarly, in putting PERPETRATOR in a position of power, authority, and leadership within the L.D.S. CHURCH community, and placing him in contact with children, L.D.S. CHURCH and DOES 3-100 facilitated PERPETRATOR's access and abuse and trafficking of PLAINTIFF.

71.     Each of the above interactions constitutes a venture between L.D.S. CHURCH, and DOES 3-100, and PERPETRATOR. The trafficking venture involved economic risk if it would have been discovered by L.D.S. CHURCH community members. L.D.S. CHURCH would have lost significant tithes, other financial commitments, and free labor that it receives from members as a result of their outrage towards PERPETRATOR's conduct.

72.     L.D.S. CHURCH benefits from participating in the venture by preserving its wealth, reputation, and access to free labor from within their community. In doing so, L.D.S. CHURCH, and DOES 3-100 facilitates childhood sexual abuse and sexual assault to protect its interests.

73.     The trafficking venture involved physical risk because if caught performing sexual acts with a minor PERPETRATOR would have faced severe criminal consequences for PERPETRATOR.

74.     As alleged above, L.D.S. CHURCH knew or recklessly disregarded the fact that since PERPETRATOR had been charged with the sexual abuse of a minor girl in the same age

range as PLAINTIFF, that PLAINTIFF was at risk of being coerced by PERPETRATOR to perform commercial sex act.

75.　　Therefore, L.D.S. CHURCH and DOES 3-100 are liable for sex trafficking as known beneficiaries pursuant to U.S.C. § 1591(a)(2) and PLAINTIFF is entitled to bring this civil action pursuant to § 1595 (a).

76.　　As a direct result of L.D.S. CHURCH, DOES 3-100, and PEREPTRATOR participating in the trafficking venture, PLAINTIFF suffered severe physical and emotional harm. As a direct and proximate cause of the sex trafficking venture PLAINTIFF was left in the care of PERPETRATOR, who was a known abuser at the time. When left alone with PERPETRATOR, PLAITNIFF was raped and later molested and groped over her clothes, as a direct result of the trafficking venture. L.D.S. CHURCH and DOES 3-100 worked to conceal PERPETRATOR's abuse in order to protect their own reputation and monetary interests. Without these actions, PLAINTIFF would not have been left in the care of PERPETRATOR, nor alone with him, which resulted in her sexual assault and abuse, via her trafficking.

77.　　An individual who is a victim of violation of 18 U.S.C. § 1591 may bring a civil action against their perpetrator, or whoever knowingly benefits, or attempts or conspires to benefit, financially orby receiving anything of value from participation in the venture which that person knew or should have known has engaged in an act in violation of the code, under 18 U.S.C. § 1595.

78.　　As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

79.     As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

80.     L.D.S. CHURCH and DOES 3-100's actions amounted to malicious and oppressive conduct because L.D.S. CHURCH and DOES 3-100 knowingly protected the interests of a known sexual predator but continued to allow him to be in a position of leadership and authority over young community members.

81.     The conduct of L.D.S. CHURCH, DOES 3-100, and PERPETRATOR was a knowing and intentional violation of 18 U.S.C. § 1591(a)(1), and 18 U.S.C. § 1565, which entitles PLAINTIFF to punitive and treble damages.

## COUNT 2

### NEGLIGENCE

**(Plaintiff Against All Defendants and Does 3-100)**

82.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

83.     DEFENDANTS are persons or entities who owed a duty of care to PLAINTIFF and/or the minor's parents or had a duty to control the conduct of the PERPETRATOR by way of the special relationship existing between those individuals.

84.     DEFENDANTS knew or should have known of PERPETRATOR's misconduct and inappropriate sexual behavior towards young members of the L.D.S. CHURCH community, including PLAINTIFF. Furthermore, L.D.S. CHURCH and DOES 3-100 should have known of

the unlawful sexual behavior when charges were brought against PERPETRATOR in September 2006, for PERPETRATOR's sexual abuse of a different young member of the L.D.S. CHURCH community.

85.     Despite having knowledge of the misconduct, DEFENDANTS and DOES 3-100, failed to take adequate preventative action to control the conduct, failed to warn, report, and/or confront PLAINTIFF regarding the abuse, despite having a legal duty to do so.

86.     As a result of the negligence of DEFENDANTS and DOES 3-100, PLAINTIFF was sexually abused by PERPETRATOR.

87.     Had DEFENDANTS fulfilled their duties and responsibilities owed to PLAINTIFF in the special relationship DEFENDANTS had with minor PLAINTIFF, she would not have been subject to the misconduct aimed against her.

88.     As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.


**COUNT 3**

**NEGLIGENT SUPERVISION OF A MINOR**

**(Plaintiff Against All Defendants and Does 3-100)**

89.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

90.     Defendants and DOES 3-100, their agents and or employees, each of them, were

responsible for the care, custody, control, supervision and protection of their minor members, like PLAINTIFF, entrusted to them due to existing special relationships and/or in the course of community involvement with L.D.S. CHURCH religious traditions as carried out by L.D.S. CHURCH employee, agent, and/or representative, Second Counselor to the Bishop, PERPETRATOR, on L.D.S. CHURCH property. Thus, each of these said Defendants had a duty to adequately and properly supervise, monitor, and protect PLAINTIFF from known and knowable dangers; like PERPETRATOR, the Second Counselor to the Bishop, a figure of authority, in a position of leadership, for the CHURCH community he belonged to with PLAINTIFF.

91.    Defendants and DOES 3-100 breached their duty to properly and adequately supervise, monitor and protect PLAINTIFF by, in part, ignoring clear and obvious indicators that PERPETRATOR was engaged in repeated inappropriate abusive behavior towards young members of the L.D.S. CHURCH community, including PLAINTIFF. PERPETRATOR also exhibited some of this abusive behavior during L.D.S. CHURCH affiliated events on L.D.S. CHURCH property. During L.D.S. CHURCH events, taking place on L.D.S. CHURCH property, the Stake Center, with L.D.S. CHURCH members and leaders present, PERPETRATOR would follow PLAINTIFF, and upon information and belief other young members of the community, into isolated spaces in order to sexually abuse them.

92.    Had Defendants and DOES 3-100 adequately and properly supervised, monitored, and protected its congregants, especially its minor members, PLAINTIFF would not have experienced all if not some of the harm that she endured.

93.    Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

23

94.     Had Defendants adequately performed their duty and responsibility, then PLAINTIFF would not have been subject to the sexual assaults and sexual abuse she endured, which still impacts her today, as alleged herein.

95.     As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

## COUNT 4

## NEGLIGENT FAILURE TO WARN, TRAIN OR EDUCATE

### (Plaintiff Against L.D.S. CHURCH and Does 3-100)

96.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

97.     L.D.S. CHURCH, its agents, and employees, including bishops, clergy, and counselors, and DOES 3-100, had a duty to warn, train and educate the young members of the community, in its custody, care and control, including PLAINTIFF, on known or knowable dangers posed by its faculty and staff. L.D.S. CHURCH, its agents, and employees, and DOES 3-100, also had a duty to warn train, and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing with the young members in its community.

98.     L.D.S. CHURCH, its agents, and employees, including bishops, clergy, and counselors, and DOES 3-100, breached their duty to PLAINTIFF by failing to warn her of known and knowable dangers posed by its faculty and staff, including PERPETRATOR in failing to inform and educate PLAINTIFF on L.D.S. CHURCH's sexual harassment policies and the

methods to identify, report, and respond to inappropriate sexual harassment and conduct by the leadership and authority holding members, including PERPETRATOR, of L.D.S. CHURCH's sexual harassment policies.

99.     As a direct legal result of this negligence from L.D.S. CHURCH, its employees and/or agents, and DOES 3-100, PLAINTIFF was sexually assaulted and abused by an individual in a leadership position, who was serving as Second Counselor the Bishop.

100.     Had Defendants L.D.S. CHURCH, its employees and/or agents, and DOES 3-100, fulfilled their duties and responsibilities, PLAINTIFF would not have been injured and damaged.

101.     As a direct and legal result of this negligent conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

## COUNT 5

### SEXUAL ASSAULT OF A MINOR

### (Plaintiff Against PERPETRATOR)

102.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

103.     From around October 2006 through sometime in 2007, PERPETRATOR used his position of trust and authority as Second Counsel to the Bishop to sexually assault PLAINTIFF.

104.     As a legal result of the foregoing, PLAINTIFF was injured, sustaining bodily injury, shock and injury to her nervous system and person, all of which caused and continues to cause PLAINTIFF great mental and physical pain and suffering.

105.    A further result of the wrongful acts of PERPETRATOR, PLAINTIFF has incurred economic damages, including medical care and treatment costs, loss of earnings and loss of earning capacity according to proof.

106.    PLAINTIFF has thereby sustained damages in an amount in excess of the minimum jurisdiction limits of this court.

## COUNT 6

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and Does 3-100)

107.    PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

108.    Acting with knowledge of his position of authority and special relationship with PLAINTIFF and realizing that he could exert his influence and authority on PLAINTIFF's mother to leave PLAINTIFF alone with him, PERPETRATOR coerced PLAINTIFF's mother to leave PLAINTIFF with him so that he could force PLAINTIFF to engage in unlawful sexual acts. PERPETRATOR used force and threat of violence against PLAINTIFF in order to force her to engage in unlawful sexual acts.

109.    PERPETRATOR used his leadership position and special relationship with PLAINTIFF, as an authority figure at L.D.S. CHURCH, to cause PLAINTIFF to fear for her mother's safety if she ever reported the abuse.

110.    PERPETRATOR's acts were intentional, willful, oppressive, and maliciously done for the purpose of causing PLAINTIFF to suffer emotional harm, mental anguish, and emotional distress, or with reckless disregard for the likelihood that he would cause PLAINTIFF such distress.

111.     Furthermore, the Bishop whom PLAINTIFF reported the abuse to in 2012, used his influence and position of authority within L.D.S. CHURCH to shame PLAINTIFF for reporting the abuse.

112.     Bishop, acting as an agent on behalf of L.D.S. CHURCH, when he received notice of PLAINTIFF's abuse, intentionally and maliciously told PLAINTIFF she needed to forgive her abuser and then repent for not forgiving him, intentionally doing so to cause PLAINTIFF to suffer emotional harm, humiliation, mental anguish, and emotional distress, or with reckless disregard for the likelihood that it would cause PLAINTIFF such distress.

113.     As a direct legal result of Defendants actions and misconduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

## COUNT 7

## NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

### (Plaintiff Against L.D.S. CHURCH and Does 3-100)

114.     PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

115.     L.D.S. CHURCH, its agents, and employees, including bishops, clergy, and counselors, and DOES 3-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the L.D.S. CHURCH community from harm caused by unfit and dangerous individuals within the leadership of L.D.S. CHURCH, like that of

Second Counselor to the Bishop.

116.     During the time PLAINTIFF was being sexually abused by PERPETRATOR, L.D.S. CHURCH and DOES 3-100 knew of complaints of serious misconduct and inappropriate behavior made against PERPETRATOR, namely that the police had charged him with sexual abuse of a minor. Yet, Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against PERPETRATOR.

117.     Instead, L.D.S. CHURCH, and DOES 3-100, ignored the misconduct and only when L.D.S. CHURCH learned that PERPETRATOR had been convicted of child sexual abuse and had to register as a sex offender did L.D.S. CHURCH ex-communicate PERPETRATOR.

118.     Defendants, L.D.S. CHURCH and DOES 3-100, knew or should have known that PERPETRATOR engaged in repeated inappropriate conduct with young members of the community, including PLAINTIFF.

119.     Defendants, each of them breached their duty to investigate properly and adequately hire, train, and supervise PERPETRATOR as a Second Counselor to the Bishop to L.D.S. CHURCH.

120.     Had Defendants, each of them, properly investigated, supervised, trained and monitored PERPETRATOR's conduct and actions they would have discovered that he was unfit to be employed as a Second Counselor to the Bishop and exercise authority over minors of the community. By failing to adequately supervise, monitor, or investigate, Defendants allowed PERPETRATOR to continue, unobstructed, to prey on the young members of the community, including minor PLAINTIFF.

121.     L.D.S. CHURCH and DOES 3-100, negligently hired, supervised, retained, monitored, and otherwise employed PERPETRATOR and negligently failed to ensure the safety

of the young members of the L.D.S. CHURCH community, including PLAINTIFF, whom PERPETRATOR was allowed authority over.

122.    L.D.S. CHURCH also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual abuse or sexual assault of minor community members by those in leadership and authority positions with L.D.S. CHURCH, including PERPETRATOR.

123.    Had L.D.S. CHURCH, and DOES 3-100, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate those in leadership and authority positions with CHURCH, PLAINTIFF would not have been subject to the sexual assault and abuse she suffered at the hands of PERPETRATOR.

124.    As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

## COUNT 8

**SEXUAL ABUSE OF A MINOR (Plaintiff Against All Defendants and Does 3-100)**

125.    PLAINTIFF re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

126.    While PLAINTIFF was a member of L.D.S. CHURCH, PERPETRATOR took advantage of his position of authority and leadership and trust to engage in unlawful sexual acts

with PLAINTIFF. PLAINTIFF did not consent to the acts, nor could she have consented to the acts given PLAINTIFF's age when the abuse took place.

127.    L.D.S. CHURCH ratified PERPETRATOR's sexual abuse and sexual assault of PLAINTIFF because L.D.S. CHURCH had knowledge that PERPETRATOR had sexually assaulted and abused other young girls who were members of L.D.S. CHURCH, and yet they intentionally allowed PERPETRATOR to remain in his position of authority in L.D.S. CHURCH, and did nothing to prevent any further abuse from occurring, thus allowing PERPETRATOR to gain access to and sexually abuse PLAINTIFF. The L.D.S. CHURCH did not discipline, denounce, or discharge PERPETRATOR after his September 2006 charge of sexual abuse of a minor. As such they instead accepted and thus ratified PERPETRATOR's conduct.

128.    At all times, Defendants, and DOES 3-100, were employees or administrators who were acting within the course and scope of their employment or agency with L.D.S. CHURCH when they ratified, and adopted as if it were their own, PERPETRATOR's conduct.

129.    As a direct legal result of this conduct, PLAINTIFF suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdiction of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgement as follows:

      a.    As to Count 1 and to all DEFENDANTS, damages to PLAINTIFF in accordance with proof including as applicable:

            i.    Past and future medical expenses for PLAINTIFF;

      ii.     Past and future loss of earnings of PLAINTIFF;

      iii.    Other economic loss;

      iv.    Non-economic loss according to proof:

            i.    Compensation for physical pain and discomfort;

            ii.    Compensation for fright, nervousness, anxiety, worry and apprehension;

      v.    Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

      vi.    Reasonable costs to PLAINTIFF as provided by law;

      vii.   Attorney's fees pursuant to 18 U.S.C. § 1595(a)

b.  As to Count 2 and to all DEFENDANTS and DOES 3-100, damages to PLAINTIFF according to proof including as applicable:

      i.     Past and future medical expenses for PLAINTIFF;

      ii.    Past and future loss of earnings of PLAINTIFF;

      iii.    Other economic loss;

      iv.    Non-economic loss according to proof:

            i.    Compensation for physical pain and discomfort;

            ii.    Compensation for fright, nervousness, anxiety, worry and apprehension;

      v.    Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

      vi.    Reasonable costs to PLAINTIFF as provided by law.

c.  As to Count 3 and to CHURCH, and DOES 3-100, damages to

PLAINTIFF according to proof including as applicable:

    i.   Past and future medical expenses for PLAINTIFF;

    ii.   Past and future loss of earnings of PLAINTIFF;

    iii.   Other economic loss;

    iv.   Non-economic loss according to proof:

        i.   Compensation for physical pain and discomfort;

        ii.   Compensation for fright, nervousness, anxiety, worry and apprehension;

    v.   Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

    vi.   Reasonable costs to PLAINTIFF as provided by law.

d.   As to Count 4 and to PERPETRATOR, damages to PLAINTIFF according to proof including as applicable:

    i.   Past and future medical expenses for PLAINTIFF;

    ii.   Past and future loss of earnings of PLAINTIFF;

    iii.   Other economic loss;

    iv.   Non-economic loss according to proof:

        i.   Compensation for physical pain and discomfort;

        ii.   Compensation for fright, nervousness, anxiety, worry and apprehension;

    v.   Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

    vi.   Reasonable costs to PLAINTIFF as provided by law.

e. As to Count 5 and to all DEFENDANTS and DOES 3-100, damages to PLAINTIFF according to proof including as applicable:

    i. Past and future medical expenses for PLAINTIFF;

    ii. Past and future loss of earnings of PLAINTIFF;

    iii. Other economic loss;

    iv. Non-economic loss according to proof:

        i. Compensation for physical pain and discomfort;

        ii. Compensation for fright, nervousness, anxiety, worry and apprehension;

    v. Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

    vi. Reasonable costs to PLAINTIFF as provided by law.

f. As to Count 6 and to all DEFENDANTS and DOES 3-100, damages to PLAINTIFF according to proof including as applicable:

    i. Past and future medical expenses for PLAINTIFF;

    ii. Past and future loss of earnings of PLAINTIFF;

    iii. Other economic loss;

    iv. Non-economic loss according to proof:

        i. Compensation for physical pain and discomfort;

        ii. Compensation for fright, nervousness, anxiety, worry and apprehension;

    v. Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

      vi.    Reasonable costs to PLAINTIFF as provided by law.

g.   As to Count 7 and to CHURCH, and DOES 3-100, damages to PLAINTIFF according to proof including as applicable:

      i.    Past and future medical expenses for PLAINTIFF;

      ii.    Past and future loss of earnings of PLAINTIFF;

      iii.   Other economic loss;

      iv.    Non-economic loss according to proof:

           i.    Compensation for physical pain and discomfort;

           ii.    Compensation for fright, nervousness, anxiety, worry and apprehension;

      v.    Pre-judgment and post-judgment interest to PLAINTIFF according to proof;

      vi.    Reasonable costs to PLAINTIFF as provided by law.

h.   As to Count 8 and to all DEFENDANTS and DOES 3-100, damages to PLAINTIFF according to proof including as applicable:

      i.    Past and future medical expenses for PLAINTIFF;

      ii.    Past and future loss of earnings of PLAINTIFF;

      iii.   Other economic loss;

      iv.    Non-economic loss according to proof:

           i.    Compensation for physical pain and discomfort;

           ii.    Compensation for fright, nervousness, anxiety, worry and apprehension;

      v.    Pre-judgment and post-judgment interest to PLAINTIFF according

        to proof;

       vi.     Reasonable costs to PLAINTIFF as provided by law.

i.    As to Count 1 and all Defendants and DOES 3-100, by virtue of knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), and 1595m, awarding to PLAINTIFF punitive and treble damages.

j.    All such other relief the Court deems necessary, just and proper.

## **JURY DEMAND**

PLAINTIFF demands a trial by jury on all issues so triable.

                                          Respectfully Submitted,

Dated: January 28, 2025                  *s/*Antonio M. Romanucci
                                       *Counsel for Plaintiff*

Antonio M. Romanucci (ARDC #6190290)
**ROMANUCCI & BLANDIN**
321 N. Clark St., Suite 900
Chicago, IL 60654
M: (312) 458-1000
F: (312) 458-1004
aromanucci@rblaw.net