**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH PETERSON, <br><br> Plaintiff, <br><br> v. <br><br> THE CHURCH OF THE LATTER-DAY SAINTS; RICHARD MCCLUNG; AND DOES 3–100. <br><br> Defendants. | Case No. 1:25-cv-00947 <br><br> Hon. John Robert Blakey |

**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12(c), The Church of Jesus Christ of Latter-day Saints (the "Church") moves for judgment on the pleadings as to Count 1 of Plaintiff's Complaint (ECF 2), alleging that the Church violated the Trafficking Victims' Protection Reauthorization Act ("TVPRA").

**INTRODUCTION**

The TVPRA allows sex trafficking victims to sue both "the perpetrator" and "participant[s]" who "knowingly benefit" from participation in a venture they "knew or should have known" engaged in sex trafficking. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). Participant liability requires proving the same elements as direct perpetrator liability, plus additional elements. *Id.* Congress enacted the TVPRA to combat human trafficking—"a contemporary manifestation of slavery"—and target an "international sex trade" exploiting persons in "commercial sexual services." Pub. L. No. 106-386 § 102, 114 Stat. 1488 (2000); Pub. L. No. 108-193 § 2, 117 Stat. 2875 (2003).

Plaintiff tries to turn the Church's alleged negligence into sex trafficking. She alleges that in October 2006, Church volunteer Richard McClung ("McClung") sexually assaulted her after

1

offering "free babysitting" while her mother went shopping. But TVPRA claims "require a causal connection between the sexual act and the giving or receiving of anything of value." *United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022). Plaintiff does not (and cannot) allege that her mother was "exchang[ing] [the free babysitting] for the sex acts," and the Church had nothing to do with the alleged babysitting offer. *Richardson v. Nw. Univ.*, 2023 WL 6197447, at *7 (N.D. Ill. Sept. 21, 2023). While Plaintiff alleges McClung assaulted her on two other occasions, there are no allegations supporting that these were commercial exchanges related to the Church either. With no plausible allegations of commercial exchange, her TVPRA claim fails.

Other pleading deficiencies independently require dismissal. A TVPRA claim requires the alleged actions be "in or affecting interstate commerce." Plaintiff does not (and cannot) plausibly allege that a single instance of free babysitting affected interstate commerce. A typical TVPRA case involves advertising or purchases across state lines. *See United States v. Campbell*, 770 F.3d 556, 574 (7th Cir. 2014) (advertising prostitution and purchasing supplies and services from out-of-state satisfied interstate commerce requirement). If the conduct in this case affects interstate commerce, every alleged sexual assault does. Plaintiff also fails to allege any threshold actions for TVPRA liability, such as "harboring" or "solicitation."

Nor does Plaintiff plead the facts necessary for participant liability—that the Church: (1) knew of McClung's primary violation (her allegations establish the Church learned of the assault years later (Compl. ¶¶ 9, 20, 24)); (2) was involved in a "venture" with McClung (implausible given the Church's lack of knowledge); and (3) knowingly benefited from the venture (in fact, Plaintiff's allegations show that the Church was exposed to reputational harm (*id.* ¶¶ 70, 72, 76)). No such facts are alleged because no such facts exist.

Plaintiff's TVPRA claims bear little relation to the trafficking Congress sought to prevent

2

and unsurprisingly fail to plausibly plead such claims. *Salesforce*, 76 F.4th at 548 (TVPRA "gave victims of sex trafficking" a civil remedy). The Court should grant judgment on the pleadings as to Count 1, with prejudice.

## BACKGROUND

Although the Church disputes the allegations in Plaintiff's complaint, for purposes of a Rule 12(c) motion, the Court presumes the truth of those allegations. *See Ardagh Metal Packaging USA Corp. v. Am. Craft Brewery, LLC*, 718 F. Supp. 3d 871, 877 n.3 (N.D. Ill. 2024). This motion proceeds with that legal principle in mind and takes and recounts Plaintiff's allegations as pled.

In 2006, Richard McClung was a second counselor to the bishop of a Church congregation in Illinois. Ans. ¶ 3, ECF 31. Plaintiff's mother was a volunteer activities coordinator for the same congregation. Compl. ¶¶ 7, 38. In October 2006, Plaintiff alleges that she and her mother visited McClung at his home. *Id*. ¶ 7. During this visit, McClung allegedly convinced Plaintiff's mother to leave Plaintiff with him while she went shopping. *Id.* While Plaintiff's mother was gone, McClung allegedly sexually assaulted Plaintiff and threatened to "hurt or kill" her mother if she told anyone. *Id*. Because of that threat, Plaintiff stayed silent and did not report the abuse. *Id*. ¶¶ 9–10. Plaintiff alleges McClung molested her two other times on Church property. *Id*. ¶¶ 11–12.

Plaintiff alleges "on information and belief" that McClung "had been charged with the sexual abuse of another minor girl in September 2006"—one month before he assaulted Plaintiff— and that the Church "did nothing to protect the young children" and continued allowing McClung to serve as counselor. *Id*. ¶ 16. In 2007, the Church excommunicated McClung. *Id*. ¶ 18; Ans. ¶ 18. McClung registered as a sex offender in September 2007. *Id*.

When Plaintiff was 14, she alleges that she saw McClung at a Church worship service. *Id.* ¶ 18. Memories of the abuse "came flooding back," and Plaintiff told her mother what McClung

3

had done. *Id.* ¶¶ 20–23. Plaintiff and her mother reported the abuse to the police and their bishop. *Id.* ¶ 24. According to Plaintiff, nothing came from meeting the bishop. *Id.*

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard mirrors a motion to dismiss for failure to state a claim. *Fed. Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020). The complaint must show "enough heft" to demonstrate plausible entitlement to relief. *Taylor v. Salvation Army Nat. Corp.*, 110 F.4th 1017, 1028 (7th Cir. 2024). Where "the cause of action relies on a broad-gauged statute" like the TVPRA, "more factual particularity may be required," especially if the case is not "within the heartland" of the TVPRA." *Id.* at 1028–29 (dismissing claim under "forced labor provisions" of TVPA). Plaintiff's claim is far from the heartland of the TVPRA. Indeed, the facts alleged do not fit within that statute and never could. This Court should dismiss Plaintiff's TVPRA claim with prejudice.

## ARGUMENT

### I.      Plaintiff Fails to State a Claim under the TVPRA.

In the TVPRA of 2003, "Congress gave victims of sex trafficking the power to bring civil actions to recover damages from those who trafficked them." *Salesforce*, 76 F.4th at 548. Congress later "broadened that civil remedy to allow . . . participant liability." *Id*. Thus, victims can recover "not only from a trafficker who committed a federal crime but also from a person who 'knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act' of sex trafficking." *Id*. (quoting 18 U.S.C. § 1595(a)). The Court must "first ask whether plaintiff[ ] ha[s] alleged that [she] is the victim of a criminal violation of Section 1591" before analyzing participant liability. *Id.* at 551–554. Plaintiff's allegations fall short at both steps.

A. **Plaintiff fails to plausibly allege that Plaintiff was a victim under 18 U.S.C. § 1591.**

Plaintiff must first plausibly allege that McClung (1) "in or affecting interstate commerce" (2) "recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], advertis[ed], maintain[ed], patronize[ed], or solicit[ed]" Plaintiff (3) "knowing . . . that [she] ha[d] not attained the age of 18 years," and (4) would "be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). McClung knew Plaintiff was under 18, but Plaintiff fails to plausibly plead that he committed a "*commercial* sex act," that his actions impacted interstate commerce, or that he harbored or solicited her (the hooks Plaintiff attempts to plead).

1. **Plaintiff does not plausibly allege a "commercial sex act."**

Plaintiff's allegation that "offering free babysitting services" constituted a "commercial sex act" falls short.[1] A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). This "connot[es] a transactional exchange of value for sex." *United States v. Johnson*, 2024 WL 4278071, at *3 (N.D. Ill. Sept. 24, 2024); *see also Richardson*, 2023 WL 6197447, at *7 (considering whether "allegations . . . plausibly allege[d] an exchange of [property] for the sex acts").

The alleged assaults on Plaintiff were not a "transactional exchange" under the TVPRA. Even assuming free babysitting qualifies as "anything of value," Plaintiff does not allege that the babysitting was provided "on account of" the sex act. There must be "a causal connection between

---

[1] Plaintiff also alleges that McClung sexually assaulted her on two other occasions. Compl. ¶¶ 11–12. But she fails to include any factual allegations about how these constituted "commercial sex acts." *Id.* Instead, she alleges in a conclusory manner that she was "coerced into performing a commercial sex act on at least three different occasions." *Id.* at ¶ 60. Courts have rejected similar conclusory allegations. *Doe (C.T.K.) v. Choice Hotels Int'l, Inc.*, 2026 WL 84449, at *5 (E.D. Wis. Jan. 12, 2026) ("Significantly, missing from Plaintiff's Complaint are non-conclusory allegations or facts that show how she was forced or how she was coerced to engage in commercial sex acts.").

the sexual act and the giving or receiving of anything of value." *Raniere*, 55 F.4th at 365. There is "no meaningful difference between ['on account of'] and 'because of.'" *Id*. at 363. Courts routinely hold that TVPRA liability is imposed *only* where the sexual act occurs "because" the perpetrator gave or received something valuable. *Cf. Richardson*, 2023 WL 6197447, at *7 ("commercial sex act" plausibly alleged when complaint supported inference "that the fans and donors were allowed to engage in sex acts with the cheerleaders *in exchange* for . . . financial support" (emphasis added)); *Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019) (sex act "commercial in nature *because* [defendant] offered . . . valuable career advancement" (emphasis added)); *Raniere*, 55 F.4th at 366 (affirming conviction because evidence "establishe[d] that [third party] received things of value *on account of* . . . assigning slaves to engage in sexual acts" (emphasis added)).

Plaintiff does not allege anyone (and certainly not the Church) received something of value "because of" McClung's sexual assault. The only person who Plaintiff alleges received anything was Plaintiff's mother—who received, according to Plaintiff, "free babysitting services"—but Plaintiff does not allege that she received those services "on account of" the alleged sexual assault. Compl. ¶ 57. In fact, Plaintiff alleges that her mother received that "free labor . . . *in exchange* for [her] go[ing] [to] purchase items and goods at the store *for the benefits* of [the] Church." *Id.* ¶ 61 (emphasis added). This falls far short of the type of allegation that would suffice (i.e., alleging that her mother provided babysitting services *in exchange* for McClung's sex acts). Thus, Plaintiff's complaint facially shows that this was not the "commercial" exchange of "a sex act" for "anything of value." McClung's assault (if true) was surely criminal, but it was not a "*commercial* sex act" prosecutable under 18 U.S.C. § 1591(a).

### 2. Plaintiff fails to plausibly allege that McClung committed a commercial sex act "in or affecting" interstate commerce.

Plaintiff does not plausibly allege that the alleged assaults were "in or affecting" interstate

6

commerce as the TVPRA requires. Plaintiff offers only the conclusory allegation that "Plaintiff's trafficking had more than a *de minimis effect* on interstate commerce since he offered his free labor in babysitting in exchange for Plaintiff's mother to go purchase items . . . for the benefit of L.D.S. Church." Compl. ¶ 61. This fails to plausibly allege the interstate commerce element.

Under the Commerce Clause, Congress may regulate: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, and persons or things in interstate commerce; and (3) activities that "substantially affect" interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 33-34 (2005). The substantial effect inquiry requires a "realistic probability" of affecting interstate commerce. *United States v. Arif*, 154 F.4th 592, 596 (8th Cir. 2025) (holding that, under TVPRA, there had to be a "realistic" probability of "affecting commerce"); *United States v. Morgano*, 39 F.3d 1358, 1371 (7th Cir. 1994) (applying standard to statute with similar language).

Plaintiff does not plead how a single instance of babysitting or a single grocery store transaction meets the TVPRA's interstate commerce requirement. Courts have rejected similar allegations. For example, in *Arif,* the Eighth Circuit held that "use of an instrumentality of commerce for a twenty-minute intrastate trip" and payment of $20 did not meet the TVPRA's interstate commerce requirement. 154 F.4th at 598. Instead, the "*de minimis*" actions taken were insufficient and stood in "sharp contrast" to other cases where there were "cell phone communications," "advertising," or the "use of the mail." *Id.* Plaintiff does not allege the use of any channels or instrumentalities of interstate commerce, nor any activity with a substantial effect on interstate commerce. *See* Compl. ¶¶ 7, 38, 61, 62. And unlike *Arif*, Plaintiff's allegations rest entirely on her mother's independent actions, irrelevant to whether *McClung*'s actions satisfy the commerce requirement. 18 U.S.C. § 1591(a) (prohibiting "*whoever* knowingly . . . in or affecting interstate or foreign commerce" engages in sex trafficking of children (emphasis added)).

This case does not contain any of the typical interstate-commerce activities, such as interstate advertisement or purchases used to assist or promote sex trafficking, or the transporting of the victims themselves across state lines. *Campbell*, 770 F.3d at 575 (prostitution business "advertised online, purchased supplies and promotional materials from out-of-state companies, and employed workers from out-of-state"); *United States v. Wearing*, 865 F.3d 553, 557 (7th Cir. 2017) (defendant stipulated Craigslist advertisement "affected interstate commerce"); *United States v. Phea*, 755 F.3d 255, 263 (5th Cir. 2014) (defendant purchased phone for victim and included that number in Internet advertisements); *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (sex trafficking advertised across state lines); *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014) (defendant purchased condoms and clothes manufactured out-of-state and used Chinese-made cellphone to further sex trafficking activities).

Thus, Plaintiff's failure to satisfy the interstate commerce requirement presents a second, independent reason to grant judgment on the pleadings on the TVPRA claim.

### 3. Plaintiff does not plausibly allege that McClung harbored or solicited her for the purpose of engaging in a commercial sex act.

Plaintiff alleges that McClung "harbored" her while her mother went shopping and "solicited" services by offering free babysitting. Compl. ¶ 57. These allegations do not establish predicate actions under Section 1591(a)(1).

First, Plaintiff fails to plausibly allege McClung "harbored" her. The TVPRA does not define "harbor" or "solicit," but courts interpret "harbor" to mean "providing lodging to someone for the purposes of obtaining her labor or services against her will." *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (analyzing 18 U.S.C. § 1590, concerning trafficking into servitude). This accords with the ordinary meaning of "harbor." *See Harbor*, Merriam-Webster, https://www.merriam-webster.com/dictionary/harbor (last visited, Mar. 2, 2026) (defining

8

"harbor" as "to give shelter or refuge to").

Briefly babysitting a child with parental permission does not constitute "harbor[ing]." Providing "lodging," "shelter," or "refuge" each imply far more than a short babysitting stint. *Compare Doe No. 1 v. Rajveer LLC*, 2025 WL 907890, at *4 (M.D. Ala. March 25, 2025) (renting hotel room "cannot fall within the plain meaning of 'harbor'"), *with United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) (defendant harbored victim who "stayed at [his] house for five days and four nights while she worked as a prostitute"). While some courts have held that "renting a [hotel] room" *can* constitute harboring, none of these cases considered the type of "temporary" provision of babysitting services that is at issue here. *C.C. v. Rashid*, 2026 WL 252548, at *6-7 (D. Nev. Jan. 29, 2026) (collecting cases where renting rooms displayed a "pattern of conduct or tacit agreement" between the hotel and sex trafficker).

Courts should define terms "in connection with the purposes of the" act in which they are found. *See United States v. Yun Zheng*, 87 F.4th 336, 343 (6th Cir. 2023) (defining what it means to "harbor" an illegal alien). To "harbor" in the context of sex trafficking surely means more than to babysit for a short time. Without a more permanent provision of "shelter" or "lodging," such as at least renting a hotel room, this cannot constitute "harboring" under the TVPRA.

Likewise, "solicit" must mean more than offering to babysit. In criminal contexts, the Seventh Circuit interprets solicitation as requiring a "request[]" or attempt "to persuade" someone to engage in conduct. *United States v. Dvorkin*, 799 F.3d 867, 879 (7th Cir. 2015); *United States v. Hansen*, 599 U.S. 762, 771 (2023) ("Criminal solicitation is the intentional encouragement of an unlawful act."). Plaintiff does not allege McClung "solicited" Plaintiff to engage in any commercial sex act. He did not "request" that Plaintiff engage in the conduct, or seek to "persuade" her, but rather, according to Plaintiff, assaulted her forcefully. Compl. ¶ 8. While this alleged

9

assault was criminal, it does not constitute "solicitation" under the TVPRA.

\* \* \* \* \*

Plaintiff's complaint fails to plead a predicate violation under 18 U.S.C. § 1591 thrice over: she fails to plausibly allege that McClung's assault was a "commercial sex act," that his actions affected interstate commerce, or that he "harbored" or "solicited" her. Without a predicate violation, Plaintiff cannot bring a participant liability claim against the Church under 18 U.S.C. § 1595, and the Court should grant judgment on the pleadings, with prejudice.

## B.  Plaintiff does not plausibly allege participant liability.

Plaintiff also fails to plead any of the four elements necessary for participant liability. To establish participant liability, Plaintiff must plead that "(1) a venture has engaged in an act in violation of Section 1591, (2) the [Church] knew or should have known that the venture had violated Section 1591, (3) the [Church] participated in that venture, and (4) the [Church] knowingly benefited from its participation." *Id*. at 553. Plaintiff fails to satisfy any element.

### 1.  Plaintiff does not plausibly allege the existence of a venture.

"The first element" of participant liability under Section 1595 "is the existence of 'a venture which . . . has engaged in an action in violation' of Section 1591." *Salesforce*, 76 F.4th at 553 (quoting 18 U.S.C. § 1595(a)). "It is the venture that must violate Section 1591, and not the participant." *Id*. at 559.

Plaintiff fails to plausibly allege a "venture." A venture consists of "any group of two or more individuals associated in fact, whether or not a legal entity." *Richardson*, 2023 WL 6197447, at \*8 (citing 18 U.S.C. § 1591(e)(6)). "An 'association-in-fact enterprise' should have at least three structural features: 'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose.'" *Id*. at \*9 (citation omitted). Where allegations suggest actions were not taken to advance the venture's

interests, but rather individual interests, a venture is not plausibly alleged. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013).

Although the "venture" at issue "need not be specifically a sex trafficking venture," *Salesforce*, 76 F.4th at 554, Plaintiff alleges that the venture at issue here was sex trafficking, Compl. ¶¶ 71, 73, 76 (discussing "trafficking venture"). *See also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) (noting that the plaintiff "chose to frame the venture[] at issue as sex trafficking").

A venture is "an undertaking or enterprise involving risk and potential profit." *Id*. at 724. Plaintiff fails to plead the existence of any such venture. A one-time opportunistic assault by a lone wolf in sheep's clothing is not a "venture." Plaintiff alleges that McClung's actions "involved physical risk because if caught performing sexual acts with a minor [McClung] would have faced severe criminal consequences." Compl. ¶ 73. The "physical risk" of being imprisoned accompanies every crime but does not make every crime a venture.

### 2. Plaintiff does not plausibly allege that the Church participated in any such venture.

Plaintiff also fails to plausibly allege that the Church actively participated in the supposed "trafficking venture." Compl. ¶ 71. In fact, Plaintiff admits the Church did not even know about the alleged venture until years after it was over. Compl. ¶¶ 23-24. Participation requires "culpable assistance to a wrongdoer" with "a desire to promote the wrongful venture's success." *Salesforce*, 76 F.4th at 559 (cleaned up). Plaintiff alleges that the Church knew McClung posed a danger and "failed to warn, report, and/or confront Plaintiff regarding the abuse." Compl. ¶ 85. But "passive nonfeasance" is insufficient. *Salesforce*, 76 F.4th at 563. By not alleging that the Church *actively* participated in the "trafficking aspect of the venture," Plaintiff failed to plausibly allege

11

participation. *Id*. at 563–64; *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (participation requires "specific conduct that furthered the sex trafficking venture . . . undertaken with . . . knowledge . . . that it was furthering the alleged sex trafficking venture"); *U.S. v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) (participation requirement not meant to target those who turn a "blind eye" to an alleged trafficking scheme).

Moreover, Plaintiff's allegations demonstrate McClung and the Church had diverging interests and took different actions. According to Plaintiff, the Church worked to "hide, cover-up, and conceal known abuse by [McClung]," Compl. ¶ 70, while McClung engaged in sexual abuse. *Id.* ¶ 15. Rather than show that McClung and the Church took actions together to further a venture's interest, these allegations, even if taken as true, support that the Church and McClung did not share any purpose and that their alleged actions were taken "in . . . individual capacities, to advance . . . individual self-interests." *Walgreen Co.*, 719 F.3d at 854.

In short, Plaintiff fails to plausibly allege a venture or the Church's participation in a venture. She makes no plausible factual allegations that the Church provided "assistance to [McClung]" with a desire to facilitate his alleged trafficking venture. *Salesforce.com, Inc.* 76 F.4th at 559. This provides another independent basis for judgment on the pleadings.

### 3. Plaintiff fails to plausibly allege that the Church "knowingly benefited" from participation in the alleged venture.

Plaintiff must also plausibly plead that the Church "knowingly benefited" from its alleged participation in a venture. *Salesforce*, 76 F.4th at 564–65. Such benefit "need not take the form of 'profits' that are 'the specific result' of a sex-trafficking venture." *Id*. at 564. But plaintiff must allege "that the defendant knew it was receiving some value from participating in the alleged venture." *Red Roof Inns, Inc.*, 21 F.4th at 723-24. "It is axiomatic that to state a claim for beneficiary liability under the TVPRA, the defendant must have received some benefit." *Levin v.*

12

*Sarah Lawrence College*, 747 F. Supp. 3d 645, 679 (S.D.N.Y. 2024).

Plaintiff alleges the Church received tithes and free labor "in exchange for covering up" McClung's abuse. Compl. ¶ 70(c). But members' tithing and volunteer services are unrelated to any purported sex trafficking venture. Indeed, accepting Plaintiff's allegations, McClung's actions clearly *harmed* the Church by exposing it to potential reputational harm. *See Id.* ¶ 70(a) (alleging the Church had to "safeguard [its] reputation" following the abuse). The Church would not have had to protect its reputation, financial stability, or tithes had McClung not engaged in the so-called "trafficking venture." *See Id.* ¶ 70(e) (alleging that, after McClung's abuse, the Church took actions "to protect its source of income and moral reputation").

Courts hold that such allegations, alleging no benefit, fail to support a TVPRA claim. *See Levin*, 747 F. Supp. 3d at 679 ("There is no allegation that [perpetrator] paid any tuition or housing fees to [defendant college], or that [defendant college] would not have received those payments in the absence of the alleged sex or labor trafficking."); *Corradino v. Liquidnet Holdings, Inc.*, 2021 WL 2853362, at *4 (S.D.N.Y. July 8, 2021) (dismissing complaint for participant liability where plaintiff failed to allege the defendant company received any benefit from participation in sex trafficking). Again, if anything, Plaintiff's allegations show that McClung's actions (and the alleged sex-trafficking venture) could only have *harmed* the Church, not that it was benefited. This again requires that the Court grant judgment on the pleadings in favor of the Church.

### 4. Plaintiff fails to plausibly plead that the Church knew or should have known that the alleged venture had violated Section 1591.

Finally, Plaintiff fails to plausibly allege the Church knew that McClung had "engaged in an act in violation of Section 1591." *Salesforce*, 76 F.4th at 555 n.9. In fact, Plaintiff admits the Church did not know about the alleged "trafficking venture" at issue here until years later. Compl. ¶¶ 23-24.

Plaintiff alleges that she "believes and thereupon alleges that" the Church "knew or should have known that [McClung] was using his position of authority" in the Church "to gain access to and sexually abuse its minor members, including Plaintiff …." Compl. ¶ 41. Even if that were true, it does not establish the Church's knowledge of the alleged "particular venture" at issue in this case. *Salesforce*, 76 F.4th at 556. It establishes only that the Church knew McClung posed a danger, which is insufficient. *See Echart v. Fox News Network, LLC*, 2021 WL 4124616, at *11 (S.D.N.Y. Sept. 9, 2021) (dismissing TVPRA complaint where plaintiff alleged defendant was "well aware" that the alleged perpetrator "often engaged in inappropriate sexual misconduct" because "none of the conduct [plaintiff alleged defendant had knowledge of] [rose] to the level of sex trafficking"). Courts also hold that knowledge is unlikely to exist where plaintiff relies on a single event. *See Lawson v. Rubin*, 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 29, 2018) ("one visit by the police department and one ambulance sent to the residence over six years" insufficient to establish notice).

Plaintiff also alleges that the Church was aware of McClung being "charged with the sexual abuse of another minor girl in September 2006." Compl. ¶ 16. Alleged knowledge of a charge of abuse levied only a month before the assaults against Plaintiff is far short of the allegations the Seventh Circuit held sufficient to show "constructive knowledge" of a sex trafficking venture in *Salesforce*. The Plaintiff in *Salesforce* alleged that five years before Salesforce contracted with Backpage, "'law enforcement, the United States Attorneys General, and every state Governor' had 'publicly identified' Backpage 'as the biggest and most notorious sex trafficking and pimping website in the United States.'" 76 F.4th at 555. Not only this, but nationwide "news coverage identified Backpage" as the "leading platform for . . . sex trafficking" and defendant's hometown newspaper had published "400 prominent news articles about Backpage." *Id.* Unlike *Salesforce*,

which involved pervasive public dissemination, Plaintiff's allegations do not allege McClung's charge was, in any way, publicly disseminated, and the charge occurred only a month before Plaintiff's assaults. *Id.* In no way do these allegations plausibly support that the Church would have learned of McClung's abuse through "reasonable care or diligence." *Red Roof Inns, Inc.*, 21 F.4th at 725 (explaining that constructive knowledge is "that knowledge which 'one using reasonable care or diligence should have'").

Plaintiff also alleges knowledge through generalities, including sweeping allegations that the Church "had ample notice and knowledge" of McClung's "history of sexual abuse." Compl. ¶¶ 48, 70, 85, 127. But courts routinely dismiss TVPRA claims based on such general allegations. *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient . . . to demonstrate that [defendant] participated in the trafficking of plaintiff."); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ("to conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'").

Plaintiff's generic allegations of knowledge fail to pass muster. This presents yet another independent basis to dismiss Plaintiff's TVPRA claim.

## CONCLUSION

Plaintiff's TVPRA claim is deficient on several independent bases. The facts don't fit her theory, which is why Plaintiff fails to plead *any* element of participant liability *or* the three elements necessary to establish a predicate violation.

The Church asks the Court to dismiss Plaintiff's TVPRA claim with prejudice.

15

Dated: March 2, 2026           Respectfully submitted,

By:    /s/ *Matthew R. Carter*

Dan K. Webb
Matthew R. Carter
Savannah L. Murin
**WINSTON & STRAWN LLP**
300 North LaSalle Drive, Suite 4400
Chicago, Illinois 60654
Tel.: (312) 558-5600
Fax: (312) 558-5700
dwebb@winston.com
mcarter@winston.com
smurin@winston.com

*Attorneys for Defendant The Church of Jesus Christ of Latter-day Saints*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2026, I electronically filed the foregoing **Motion for Partial Judgment on the Pleadings** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Matthew R. Carter*
Matthew R. Carter

*An Attorney for Defendant The Church of Jesus Christ of Latter-day Saints*